COMMONWEALTH VS. MICHAEL DEXTER.

No. 99-P-660.

Middlesex. February 23, 2000. - August 24, 2000.

Present: BROWN, LAURENCE, & LENK, JJ.[1]

_Indecent Assault and Battery. Evidence,_ Exculpatory, Privileged communication. _Privileged Communication._

Where, at the trial of an indictment for indecent assault and battery, the defendant did not establish the existence of any privileged counseling records of the victim and failed to demonstrate a reasonable basis on which to conclude that any records he sought would contain relevant and material exculpatory evidence, the judge did not err in denying the defendant's motion to produce such records. [32-35]

INDICTMENTS found and returned in the Superior Court Department on January 29, 1998.

Pretrial motions were heard by _Judith A. Cowin,_ J., and _Joseph A. Grasso, Jr.,_ J., and the cases were heard by _Robert Malcolm Graham,_ J.

The case was submitted on briefs.

_Kenneth I. Seiger_ for the defendant.

_Martha Coakley,_ District Attorney, & _Richard D. Batchelder, Jr.,_ Special Assistant District Attorney, for the Commonwealth.

LAURENCE, J. After a jury-waived trial, the defendant was found guilty of indecent assault and battery but not guilty of additional charges of assault with intent to rape and kidnapping.[2]

_____

[1]This decision was originally released pursuant to the court's rule 1:28, as amended, 46 Mass. App. Ct. 1001 (1998), on May 26, 2000, 49 Mass. App. Ct. 1110, but is being reissued in the present form upon further consideration by the panel without substantial change.

[2]The critical facts as presented by the Commonwealth were as follows: The defendant entered the fifty-five year old victim's vehicle while it was stopped at a traffic signal on the Lowell connector that leads to Route 3. He identified himself as "Mr. Happy" and asked for a ride to North Billerica. The victim expressed willingness to take him there because she was fearful for her safety if she did not comply. She became further frightened when the defendant told her he had just been released from prison and began describing his recent

His appeal stems from the denial of one of several unsuccessful pretrial motions that he filed, which he styled a *Bishop* motion. See *Commonwealth* v. *Bishop*, 416 Mass. 169 (1993). In that motion he generally sought disclosure of the names of any physicians, psychologists or rape counselors with whom the victim had been in treatment since 1990 and the dates of any such treatment, as well as records pertaining to any alcohol or drug abuse, detoxification and/or rehabilitation.[3] The defendant was aware, through a police report, that the victim had been prescribed the drug Klonopin for anxiety, and he claimed that the victim's use of the drug could affect her credibility. A motion judge ruled that before the Commonwealth was required to provide information regarding the victim's use of Klonopin, the defendant must first provide an affidavit detailing the side effects of the drug.

The defendant subsequently filed an affidavit from his counsel, which described Klonopin's adverse effects as appearing in the then-current edition of the Physician's Desk Reference,[4] and a second affidavit from a defense investigator who had interviewed the victim. The latter affidavit recited that the victim had told the investigator that she was under the care of a doctor (though she would not reveal his name), that she had been prescribed Klonopin, and that she had experienced

sexual encounters. She sought to engage him in conversation about his family and similar matters to distract him from whatever he might have had in mind, but never told him to leave the vehicle. At some point, the defendant told the victim he was going to have sexual relations with her, reached over, and grabbed her breast over her clothing. She pushed his hand away, but he touched her breast again. She asked him to stop and began intentionally weaving the car in an effort to attract police attention. When they arrived (at his direction) at the defendant's destination, the victim pretended to exit the vehicle as the defendant was doing so, but then reentered, locked the doors, drove away and called 911. Lowell police officers and emergency medical technicians responded and found the victim crying, nervous, very shaken and hyperventilating, although she was able to direct the police to the location where the defendant had asked to be dropped off and to identify him as her assaulter.

[3]The defendant filed a related motion for the "psychiatric history of [the] complaining witness," which sought disclosure as to any psychiatric or psychological counseling the victim had received since 1992, and "the names and addresses of the person[s] or institution[s] where such counseling was provided." The motion judge took no action on this motion pending a "further submission" by the defendant. Apparently, there was no further submission.

[4]The adverse reactions recited in defense counsel's affidavit include "confusion, depression, amnesia, hallucinations, hysteria . . . ."

"flashbacks" to a rape which had occurred when she was sixteen years old, almost forty years prior to the present events.

A different judge held a hearing on the *Bishop* motion, denying it without prejudice. The judge ruled that the defendant had failed to specify the records sought as required under the first stage of the *Bishop* protocol, see 416 Mass. at 181, and that the private investigator's affidavit relied on hearsay statements which were insufficient to prove that the victim was undergoing psychiatric treatment.[5] The judge observed that the Commonwealth was under no obligation to inquire of the victim where she was being treated and who was treating her. Finally, the judge noted that the defendant could introduce expert testimony at trial as to how the victim's use of Klonopin might have affected her ability to perceive and recollect the assault.

Before trial commenced, the matter of the *Bishop* motion was sent back to the first session, and counsel informed the trial judge that nothing had changed. The trial judge then ruled that the defendant would need to provide additional information in support of the motion before the issue would be revisited.

The adverse ruling on the motion characterized as a *Bishop* motion is the sole issue raised in this appeal. The defendant claims that he is in a "catch-22"; that without the name of the victim's treating physician, he could not know where to look for records, and, therefore, could not move to compel production of those specific records as provided under the first stage of *Bishop*. By virtue of this argument, the defendant is in effect

---

[5]It is not clear from the docket whether the first motion judge had an opportunity for a further ruling after the defense presented the Physician's Desk Reference information about the side effects of Klonopin. A further ruling, dependent upon the force of any affidavit which the defendant submitted, could have required the Commonwealth to provide the name of the physician who prescribed the drug. However, the second motion judge informed counsel that he was free to "enforce that [matter]" before the first judge, but that he did not see it as a *Bishop* issue. Counsel offered to withdraw the motion "subject to further investigation." It was at this point that the judge indicated that he would deny the motion without prejudice, which was agreeable to counsel. The transcript indicates that the defendant did go back to the first session on a *Bishop*-related issue immediately prior to trial (see the text of this opinion, *infra*), but the precise nature of the relief sought is not clear. In any event, the defendant made no headway. We think it highly unlikely in the circumstances that the defense would have gained anything by learning the name of the physician who prescribed Klonopin.

acknowledging that the *Bishop* protocol is not implicated,[6] although on appeal he has argued precisely that application of the *Bishop* protocol was required in this case. The defendant posits in this court that, because it is clear that the victim was under the care of a doctor, the records would be privileged; hence, his argument runs, the judge should have in effect bypassed stage one of *Bishop* (the privilege stage) and compelled production of the records for his in camera relevancy determination (the second stage).[7]

In effect, what was accomplished by the various rulings of the motion judges was to circumscribe the defendant's attempted foray into whatever medical and counseling records pertaining to the victim existed, by narrowing the issue to the effect of the drug Klonopin on the ability of the victim to perceive and remember the incident at issue in his trial. See generally *Commonwealth* v. *Jones*, 34 Mass. App. Ct. 683, 685 (1993). This in fact appears to have been the thrust of counsel's argument before the first motion judge.

The defendant's conviction must be affirmed because, as the Commonwealth argues, the defendant never established the existence of *any* privileged records, so that there was no need to conduct a full-fledged *Bishop* analysis; his supporting affidavits were, in any event, not based on personal knowledge (see Mass. R.Crim.P. 13[a][2], 378 Mass. 871 [1979]); his affidavits, even if proper, failed to demonstrate a reasonable basis for believing that the records he sought would contain relevant and material exculpatory evidence (i.e., he failed to satisfy the second prong of the *Bishop* protocol); and, even were his arguments otherwise meritorious, he has failed to establish any prejudice from the denial of his *Bishop* motion.

We comment briefly on the latter point. In the circumstances presented by this record — where the judge found the defendant

---

[6]Thus, before the motion judge, defense counsel complained that he was unable to obtain information which would "lay[] the foundation" for a *Bishop* motion.

[7]The defendant's trial took place in 1998, following the issuance of the opinion in *Commonwealth* v. *Fuller*, 423 Mass. 216, 226 & n.9 (1996). If stage two of the *Bishop* protocol had been reached (the relevancy determination), as modified by the *Fuller* case, the defendant would have been required to show a "good faith, specific, and reasonable basis for believing that the records will contain exculpatory evidence which is relevant and material to the issue of the defendant's guilt." *Ibid.* See *Commonwealth* v. *Pare*, 427 Mass. 427, 429-430 & n.4 (1998).

not guilty on the two most serious of the three indictments against him; where the victim's recounting evidenced no confusion over the defendant's having touched her breast on two occasions (over her clothing, the victim testifying that she pushed his hand away); where the victim's trial testimony as to the indecent assault and battery was consistent with statements she made to a police officer and to a defense investigator; where the defense was able to cross-examine the victim concerning her use of Klonopin (that she had "panic attacks" and would hyperventilate, and that she used it for fright and anxiety[8]); and where it strains credulity to speculate that the victim might have confused the current incident with a rape thirty-nine years earlier, see *Commonwealth* v. *Fuller,* 423 Mass. at 227-228, and contrast *Commonwealth* v. *Baxter,* 36 Mass. App. Ct. 45, 50-52 (1994) — there was not a reasonable risk that nondisclosure of the victim's treatment records (or for that matter, the names of treating physicians) could have resulted in prejudice to the defendant or produced an erroneous conviction. As to the latter, see *Bishop,* 416 Mass. at 176-177.[9] We observe that the motion judge clearly indicated that the defendant would be permitted to introduce expert testimony on the issue whether the use of Klonopin could have affected the victim's ability to perceive and remember, see, e.g., *Commonwealth* v. *Lloyd,* 45 Mass. App. Ct. 931, 932-933 (1998); but, for whatever reason, the defense elected not to pursue that course.

Where potentially exculpatory information is not in its possession or in the possession of someone subject to its control,[10] the Commonwealth has no obligation to seek out such information for use by the defense. The fact that an alleged victim does not wish to reveal the identify of her treating physician or otherwise provide information to the defense does not justify requiring the prosecution to act as a conduit for the defense. See *Commonwealth* v. *Beal,* 429 Mass. 530, 531, 534 (1999),

---

[8]When asked on cross-examination, the victim denied she had used or was using Klonopin on the night of the incident. By reason of the fact that she testified that she experienced a "panic attack" after the events at issue, it could be reasonably inferred that she had not used the drug earlier.

[9]The defendant's only argument on the indictment for indecent assault and battery, as we understand it, was to suggest that the victim consented to the touching.

[10]The Commonwealth was, of course, under a continuing duty to disclose any exculpatory information which it possessed or controlled to the defense. It is not here accused of violating that duty.

and cases cited.[11] There was no error in the denial of the defendant's motion.

*Judgment affirmed.*

---

[11]The *Beal* defendant made a similar claim concerning the present defendant's "catch-22" argument, the court ruling that even if the defendant knew whether the complaining witness had been treated, and by whom, the defendant would still have been required to meet the relevancy requirements of stage two of the *Bishop* protocol. *Commonwealth* v. *Beal*, 429 Mass. at 533 n.2.