COMMONWEALTH *vs.* BING SIAL LIANG.

Suffolk. March 8, 2001. - May 15, 2001.

Present: GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Supreme Judicial Court,* Jurisdiction, Superintendence of inferior courts. *Practice, Criminal,* Disclosure of evidence, Discovery. *District Attorney. Witness,* Victim. *Due Process of Law,* Disclosure of evidence. *Evidence,* Exculpatory. *Words,* "Statement."

A single justice properly exercised her discretion under G. L. c. 211, § 3, to report for review by the full court an order by a judge in the Boston Municipal Court requiring the Commonwealth to disclose certain notes of a victim-witness advocate. [133-134]

This court concluded that, consistent with the language and purpose of G. L. c. 258B, and the function that victim-witness advocates perform as part of a prosecution team, the notes of an advocate, based on the advocate's conversations with a victim or witness concerning an investigation, are subject to the same discovery rules as the notes of prosecutors and, to the extent that the notes contain material, exculpatory information within the scope of Mass. R. Crim. P. 14(a)(1)(C) or relevant "statements" of a victim or witness, as defined in Mass. R. Crim. P. 14(d), the Commonwealth must disclose such information or statements to the defendant, in accordance with due process and the rules of criminal procedure [134-137]; in all other respects, the notes of the advocates are protected as work product pursuant to Mass. R. Crim. P. 14(a)(5) [137-140].

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on September 5, 2000.

The case was reported by *Abrams,* J.

*Dean A. Mazzone,* Assistant District Attorney, for the Commonwealth.

*Emily A. Karstetter (Michael B. Roitman* with her) for the defendant.

*Thomas F. Reilly,* Attorney General, *Emily R. Paradise,* Assistant Attorney General, *Stefanie Fleischer Seldin* & others, for Attorney General & others, amici curiae, submitted a brief.

COWIN, J. In this case we consider whether a judge may order the Commonwealth to disclose to a defendant the notes of a

victim-witness advocate (advocate) based on the advocate's conversations with a victim or witness concerning the investigation or prosecution at issue.[1] We conclude that the notes of advocates are subject to the same discovery rules as the notes of prosecutors. To the extent that the notes contain material, exculpatory information, Mass. R. Crim. P. 14 (a) (1) (C), 378 Mass. 874 (1979), or relevant "statements" of a victim or witness, as defined in Mass. R. Crim. P. 14 (d), 378 Mass. 874 (1979), the Commonwealth must disclose such information or statements to the defendant, in accordance with due process and the rules of criminal procedure. In all other respects, the notes are protected as work product pursuant to Mass. R. Crim. P. 14 (a) (5), 378 Mass. 874 (1979).

1. *Background.* The defendant was charged with two counts of assault and two counts of threatening to commit a crime. He later was charged with violating an abuse prevention order. Prior to trial, the defendant filed a motion for production of the notes of the advocate who spoke with the complaining witnesses. A judge in the Boston Municipal Court (motion judge) ordered the Commonwealth to disclose the notes to defense counsel. The Commonwealth filed a notice of appeal with the single justice and a written request for a stay of compliance with the order pending appeal. The Commonwealth also orally requested two different judges in the Boston Municipal Court to issue a stay. No action was taken by these judges. Pursuant to G. L. c. 211, § 3, the Commonwealth then filed a petition for relief in this court, requesting that a single justice vacate the order of the motion judge.

At a pretrial hearing, the Commonwealth informed the motion judge of its petition to the single justice and requested a stay. The judge denied the request as untimely and ordered the Commonwealth to produce the advocate's notes by 4 P.M. that day or suffer dismissal of the case.[2] The Commonwealth filed

---

[1] We acknowledge the amicus brief filed jointly by the Attorney General, the victim and witness assistance board, and district attorneys for the Berkshire, Bristol, Cape and Islands, Eastern, Hampden, Middle, Norfolk, Northern, Northwestern, and Plymouth districts.

[2] The defendant had been held without bail; dismissal would have resulted in his release.

an emergency petition with the single justice, requesting a stay of the motion judge's order. The single justice issued a stay of compliance with the discovery order and thereafter reserved and reported the case to the full court. We direct the single justice to vacate the order of the motion judge requiring the Commonwealth to disclose the notes of the advocate.

2. *Jurisdiction.* As a preliminary matter, we address the defendant's claim that review of the motion judge's discovery order under G. L. c. 211, § 3, is inappropriate. General Laws c. 211, § 3, grants this court "general superintendence of all courts of inferior jurisdiction to correct and prevent errors and abuses therein if no other remedy is expressly provided." The motion judge's discovery order is not reviewable under any established procedure. See, e.g., *Application of O'Brien*, 403 Mass. 1005, 1006 (1988) ("Discovery orders generally are not appealable because the witness who asserts a privilege can decide not to comply with the discovery order, and the witness can obtain review from a sanction for noncompliance"). Cf. Mass. R. Crim. P. 15 (a), as appearing in 422 Mass. 1501 (1996) (providing Commonwealth right to interlocutory appeal from allowance of motion to dismiss or motion to suppress evidence). Although the Commonwealth could have ignored the order, risked an adjudication of contempt, and appealed from a sanction for noncompliance or the dismissal of the case, we will not require the Commonwealth to disobey a judicial order before an appeal can be taken. See *District Attorney for the Norfolk Dist. v. Flatley*, 419 Mass. 507, 509 n.3 (1995) (given district attorney's position as elected official and chief law enforcement officer in his district, "it is proper for this Court to use its extraordinary powers under G. L. c. 211, § 3, to review the Superior Court's [order for production of prosecutor's file] at this stage rather than to limit the [district attorney] to an appeal to the full court after an adjudication of contempt"). Further, the issue reserved and reported by the single justice involves a matter of great import and continuing concern. See *Blaisdell* v. *Commonwealth*, 372 Mass. 753, 755 (1977). The single justice

properly exercised her discretion under G. L. c. 211, § 3, to reserve and report the matter for review by the full court.[3]

3. *Discussion.* Advocates guide crime victims, their family members, and witnesses through the criminal justice process. They explain the process of a criminal prosecution; notify victims and witnesses of the scheduling of proceedings and the final disposition of a case; and provide information about the availability of witness protection, witness fees, financial assistance, and other social services, including creditor and employer intercession services, where appropriate. G. L. c. 258B, §§ 3, 5. They help victims and witnesses "cope with the realities of the criminal justice system and the disruption of personal affairs attending a criminal prosecution during a time of personal trauma." *Commonwealth* v. *Harris,* 409 Mass. 461, 470 (1991), citing G. L. c. 258B, §§ 3, 5.

Performance of these functions had traditionally fallen to the prosecutors themselves. According to the amici, when faced with an increase in crime in the United States during the 1960s and 1970s, and an increasing unwillingness of victims to cooperate in the criminal justice process due to the perceived insensitive treatment they received from law enforcement officials and the courts, many States created victim-witness assistance programs and hired personnel to focus directly and solely on protecting victims' rights.[4]

In 1983, Massachusetts approved a victims' bill of rights, providing crime victims the right to be informed of and

---

[3]The defendant filed a motion to dismiss this appeal as moot, stating that he has waived his right to obtain the advocate's notes. "Litigation ordinarily is considered moot when the party claiming to be aggrieved ceases to have a personal stake in its outcome." *Acting Superintendent of Bournewood Hosp.* v. *Baker,* 431 Mass. 101, 103 (2000), quoting *Attorney Gen.* v. *Commissioner of Ins.,* 403 Mass. 370, 380 (1988). The issue, however, is "fully briefed and raise[s] matters of importance that are likely to arise again, but are unlikely to be capable of appellate review in the normal course before they become moot." *Delaney* v. *Commonwealth,* 415 Mass. 490, 492 (1993), quoting *Upton, petitioner,* 387 Mass. 359, 365 (1982). We therefore consider the merits of the issue raised "notwithstanding the lack of a live controversy." See *Delaney* v. *Commonwealth, supra.*

[4]Every State has enacted provisions affirming the right of victims to be involved in the justice process or to provide an impact statement at sentencing. See Office for Victims of Crime, United States Department of Justice, Victims' Rights Compliance Efforts: Experiences in Three States 1 (1998).

participate in criminal prosecutions. See G. L. c. 258B, inserted by St. 1983, c. 694, § 2. The statute generally requires the staff of the district attorneys to ensure that victims and witnesses are afforded such rights. See G. L. c. 258B, § 3. At the time the bill was passed, most prosecutors' offices already employed advocates and provided the services that the law guaranteed.[5]

Advocates are included in the statute's definition of "prosecutor" and generally are employees of the prosecution.[6] G. L. c. 258B, § 1, as amended through St. 1995, c. 24, §§ 2-4. See 1 L.D. Coffin, D.S. Krupp, & J.A. Healy, Pretrial Conferences, Pretrial Hearings and Discovery Motion Practice, Massachusetts District Court Criminal Defense Manual § 8.4, at 8-13 (Mass. Continuing Legal Educ. rev. 2000) (hereinafter Criminal Defense Manual) ("advocates are paid by the various district attorney[s'] offices [and] work closely with the prosecutors developing cases"). Clearly, the Legislature views advocates as a part of the prosecution team. Although we recognize that the definition of "prosecutor" in G. L. c. 258B, § 1, applies only for purposes of that chapter, we are guided by the Legislature's view as expressed in G. L. c. 258B, § 1, in addressing whether advocates' notes are subject to a discovery order.[7] See *Commonwealth* v. *Smith*, 431 Mass. 417, 421 (2000), and cases cited (statutory language principal source of insight into legislative intent and purpose). We conclude that, consistent with the language and purpose of G. L. c. 258B, and the function that advocates perform as part of the prosecution team, the work of advocates is subject to the same legal discovery obligations as that of prosecutors and their notes are subject to the same discovery rules.

Pursuant to the due process requirements of the Federal and State Constitutions, prosecutors have a duty to disclose exculpatory facts within their possession, custody, or control, even without a request from the defendant. See *United States* v. *Agurs*, 427 U.S. 97, 106-108 (1976) (prosecutors' duty to

---

[5]According to the amicus brief, advocates began working in the Commonwealth in 1975.

[6]Advocates may also be employed by the victim and witness assistance board or another criminal justice agency. G. L. c. 258B, § 1.

[7]There is no statutory privilege protecting communications between advocates and victims or witnesses.

disclose exculpatory evidence not limited to cases where defendant requests such evidence); *Commonwealth* v. *Beal,* 429 Mass. 530, 531 (1999) (prosecutors' duty to disclose extends to information in their possession or in possession of persons subject to their control); *Commonwealth* v. *Daye,* 411 Mass. 719, 728-729 (1992), and cases cited (where defendant has not requested exculpatory evidence, prosecutors violate constitutional duty only if they fail to disclose constitutionally material evidence). See also Mass. R. Crim. P. 14 (a) (1) (C). Prosecutors similarly are subject to a duty to disclose exculpatory evidence that advocates obtain from conversations with victims or witnesses, as advocates are agents of the prosecution. G. L. c. 258B, § 1. See *Commonwealth* v. *Beal, supra* at 532. Prosecutors have the primary burden of determining whether the advocates possess exculpatory information.[8] Although advocates may have acquired extensive knowledge of the legal system, they generally are not attorneys and may be unable to determine whether their notes contain exculpatory evidence. Further, they may be unaware whether a victim or witness has communicated a different version of events to the police, grand jury, prosecutor, or others. Prosecutors therefore are responsible for asking advocates about their conversations with victims or witnesses, reviewing the advocates' notes, and disclosing any exculpatory evidence therein.[9] Although the primary burden in this area rests on prosecutors, advocates themselves have a duty to relay to the prosecutor any information they obtain that they believe is exculpatory.

On request, prosecutors also must disclose material and relevant "statements" of persons within their possession,

---

[8] Prosecutors also have an ethical duty to ensure that their advocates comply with all discovery orders. See Mass. R. Prof. C. 5.3 (b), 426 Mass. 1408 (1998) ("a lawyer having direct supervisory authority over [a] nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer").

[9] The notes of the advocate in this case are not a part of the record. The Commonwealth, however, stated in its opposition to the defendant's motion that the notes do not contain any exculpatory evidence.

custody, or control.[10] Mass. R. Crim. P. 14 (a) (2), 378 Mass. 874 (1979); G. L. c. 218, § 26A, second par. "Statement" is defined as a "writing made by a person having percipient knowledge of relevant facts and which contains such facts, signed or otherwise adopted or approved by such person," or "a stenographic, mechanical, electrical, or other recording, or transcription thereof, which is a substantially verbatim recital of an oral declaration and which is recorded contemporaneously with the making of the oral declaration." Mass. R. Crim. P. 14 (d). See also Mass. R. Crim. P. 23, 378 Mass. 893 (1979) (regarding statements of witnesses for purposes of impeachment). Any victim or witness "statements" in the possession, custody, or control of an advocate are subject to a discovery order. Again, the prosecutor must determine whether the advocate's notes contain such "statements."[11] See note 8, *supra*.

Other information contained in the notes of advocates is protected as work product. See Mass. R. Crim. P. 14 (a) (5). The work product rule exempts from discovery "those portions of records, reports, correspondence, memoranda, or internal documents . . . which are only the legal research, opinions, theories, or conclusions of the adverse party or his attorney and legal staff." *Id.* Rule 14 "preserves the 'core' of the work product doctrine by 'shelter[ing] the mental processes of the attorney.' " *Commonwealth* v. *Paszko*, 391 Mass. 164, 187 (1984), quoting *United States* v. *Nobles*, 422 U.S. 225, 238 (1975). The doctrine encompasses prosecutors' notes made in preparation for trial, including notes from interviews with

[10]In addition, prosecutors must disclose any material and relevant evidence, documents, and reports from physical or mental examinations or scientific experiments. Mass. R. Crim. P. 14 (a) (2), 378 Mass. 874 (1979).

[11]The Commonwealth has stated that none of the witnesses has adopted or approved any of the contents of the advocate's notes, and that there are, therefore, no witness "statements" in those notes. As a general matter, it is unlikely that victims or witnesses sign, adopt, or approve information given to advocates, or that advocates transcribe verbatim their conversations with victims and witnesses. The amici inform us that advocates are instructed that "if the victim or witness wishes to relay factual information about the case, the . . . advocate should refer the person to a police officer or the prosecutor," quoting N. Procida & M.O. McCann, The Legal and Ethical Responsibilities of a Victim-Witness Advocate in the Criminal Discovery Process (1998).

witnesses. See *Hickman* v. *Taylor*, 329 U.S. 495, 511 (1947) ("Proper preparation of a . . . case demands that [prosecutors] assemble information, sift what [they] consider[] to be the relevant from the irrelevant facts, prepare [their] legal theories and plan [their] strategy without undue and needless interference. . . . This work is reflected . . . in interviews, statements, memoranda, correspondence, briefs, mental impressions, [and] personal beliefs . . ."); *Commonwealth* v. *Borans*, 379 Mass. 117, 151-152 (1979) (affirming judge's denial of discovery request for notes of prosecutor and his investigators relating to conversations with witnesses, after prosecutor represented to judge that notes constituted work product); *Commonwealth* v. *Lewinski*, 367 Mass. 889, 902 (1975) (recognizing that witness remarks commingled with prosecutor's work product could be reason for denial of discovery request). Requiring an attorney to produce "notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes." *Upjohn Co.* v. *United States*, 449 U.S. 383, 399 (1981).

The work product protection of rule 14 extends to an attorney's legal staff, for "attorneys often must rely on the assistance of . . . agents in the compilation of materials in preparation for trial." *United States* v. *Nobles, supra* at 238. As discussed above, the Legislature included advocates within the definition of "prosecutor," G. L. c. 258B, § 1, and considers advocates as members of the prosecution team. We have characterized advocates as "agent[s] of the district attorney."[12] *Commonwealth* v. *Harris*, 409 Mass. 461, 470 (1991). See *Commonwealth* v. *Beal, supra* at 531 (persons subject to prosecutor's duty of disclosure "are those individuals acting, in some capacity, as agents of the government in the investigation and prosecution of the case"). It therefore is logical to consider advocates as part of an attorney's "legal staff" for purposes of the work product doctrine and to protect their notes in the same manner that prosecutors' notes are protected.

The defendant, however, contends that advocates do not perform a "legal" function and that their notes are therefore

---

[12] In his motion, the defendant recognized that advocates "work on behalf of the [d]istrict [a]ttorney's office."

unlikely to contain "legal research, opinions, theories, or conclusions." According to the defendant, the general role of advocates is "to provide for communication between the [d]istrict [a]ttorneys' offices regarding victims' and witnesses' whereabouts, notification of court dates, [and] the victims' rights to return of property, protection, [and] restitution."

Acting as a liaison between victims and witnesses and the district attorney's office is one function of advocates. But advocates also interview victims and witnesses. The notes requested in this case were those based on conversations with the complaining witnesses. During oral argument, defense counsel acknowledged that the information sought included comments that the complaining witnesses made to the advocate. This is precisely the type of information that would be protected had the prosecutor gathered it. We discern no reason to treat the information differently merely because an advocate, employed by and an agent of the prosecution and included in the definition of "prosecutor," gathered it instead. Cf. *Commonwealth* v. *Borans*, *supra* at 151-152 (making no distinction between district attorney and his investigators for purposes of work product doctrine); *Commonwealth* v. *Barber*, 14 Mass. App. Ct. 1008, 1009 (1982) (information compiled by district attorney's staff for its own use about conviction record of juries on which venire members had sat could be protected as work product).[13] See also State *v.* Boehm, No. 16335 (Ohio Ct. App. Dec. 31, 1997) (affirming denial of discovery request for notes made by State agents, including advocates, regarding interviews with victim).

Further, the policy reasons for protecting prosecutors' work product, including their notes, are the same with respect to the notes of advocates. Advocates likely form mental impressions and opinions about the witnesses they interview. These impressions may be inextricable from the description and characteriza-

_____

[13]In *Commonwealth* v. *Paszko*, 391 Mass. 164, 186-188 (1984), we held that reports from the defendant's ballistic expert and the defendant's investigator were subject to a reciprocal discovery order. In contrast to this case, the reports at issue there were not protected as work product: the defense ballistics report was a nonlegal report of "scientific tests or experiments," and the investigator's report contained "statements" of witnesses. See *id.* at 187 & n.27.

tion of the witnesses' remarks contained in their notes. See, e.g., *Hickman* v. *Taylor, supra* at 516-517 (Jackson, J., concurring) (even if lawyer's written account of what witnesses have told him were perfect, "the statement would be his language, permeated with his inferences"). Prosecutors, with assistance from advocates, may rely on these notes and the advocates' impressions in developing their legal strategy, in preparing witnesses for trial, or in assessing the strength of the case for purposes of plea negotiations. See Criminal Defense Manual, *supra* at § 8.4, at 8-13 (advocates "work closely with prosecutors developing cases"). "[I]t is essential that . . . lawyer[s] work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman* v. *Taylor, supra* at 510-511.

The result here secures the defendant's right to obtain essential material for his defense (e.g., exculpatory evidence and witness "statements"), while protecting the work product of attorneys and their legal staff. We conclude that, unless advocates' notes contain exculpatory evidence or "statements" of witnesses, their notes are protected as work product under rule 14 (a) (5). Accompanying this protection is an affirmative duty on the prosecutor to review the notes of advocates and inquire about their conversations with victims. This responsibility stems from the Commonwealth's obligation to produce exculpatory evidence and, on request, material and relevant "statements" of persons. We remand the case to the county court for the entry of an order vacating the discovery order of the Boston Municipal Court judge and for further proceedings consistent with this opinion.                                              .

*So ordered.*