This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-39588**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**ALEJANDRO G.,**

Child-Appellant.

**APPEAL FROM THE DISTRICT COURT OF ROOSEVELT COUNTY**
**Donna J. Mowrer, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Jane A. Bernstein, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**YOHALEM, Judge.**

**{1}** Alejandro G. (Child) appeals the district court's judgment and disposition adjudicating him as a delinquent child based on his commission of the delinquent act of battery, contrary to NMSA 1978, Section 30-3-4 (1963), and sentencing him to "two years at the Youth Diagnostic and Development Center [(YDDC)] with the entire sentence suspended in favor of one year of supervised probation[.]" Child raises two issues on appeal: (1) the evidence that he committed a battery is insufficient to support the adjudication of delinquency; (2) the Children's Code, NMSA 1978, Sections 32A-1-1

to -26-12 (1993, as amended through 2021), does not authorize the suspended commitment imposed by the district court. Finding no error, we affirm the district court on both issues.

## BACKGROUND

**{2}** On July 21, 2020, Child came home to find his mother talking to his ex-girlfriend (Victim) and her mother. Child asked Victim to let him see her phone. Victim held up the phone, and Child snatched it from her hand and began running down the street. Concerned that Child would break it, Victim took off after him. When she caught up to Child, he grabbed her by her hair.

**{3}** A neighbor, Dayson Davis, was in his yard next door when he saw Child take off with the phone. Victim's mother asked Davis to "go help [her] daughter," so he got on his bike. Child held onto Victim's hair until Davis arrived. As Child turned to look at Davis, he swung his hand and hit Victim on the left side of her face. Victim testified that it hurt, but that she did not think Child meant to hit her. Davis told Child to give the phone back; Victim was able to take it from his hand. Child and Davis started yelling, cussing, and taking swings at each other, though neither of them made contact.

**{4}** Child testified that he never hit Victim or pulled her hair. By Child's account, he and Victim were arguing respectfully until Davis showed up and things escalated.

**{5}** The district court found that Child committed the delinquent act of battery, and ordered that he be "sentenced to two years at the [YDDC] with the entire sentence suspended in favor of one year of supervised probation[.]"

## DISCUSSION

### I.   Substantial Evidence Supports Child's Adjudication as Delinquent

**{6}** Child relies on *State v. Franklin*, 1967-NMSC-151, 78 N.M. 127, 428 P.2d 982, and *State v. Boyer*, 1985-NMCA-029, 103 N.M. 655, 712 P.2d 1, to argue that the State failed to present sufficient evidence of battery based on Child pulling Victim's hair.

**{7}** "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). In reviewing for substantial evidence, we "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176.

**{8}** For the district court to adjudicate Child as delinquent for having committed battery, the State was required to establish beyond a reasonable doubt that Child had engaged in "the unlawful, intentional touching or application of force to the person of

another, *when done in a rude, insolent or angry manner.*" Section 30-3-4 (emphases added). Child contends that the State failed to present any evidence that he pulled Victim's hair in a rude, insolent or angry manner because he testified that he and Victim were having a respectful conversation until Davis arrived.

**{9}** Our review of the record shows that Child's adjudication as delinquent was supported by substantial evidence. Davis testified that the conversation between Child and Victim escalated into arguing and yelling even before Child took the phone. Victim testified that when Child "snatched" the phone from her hand and "ran off with it," she ran after him because she thought he was going to break it. When Victim caught up to Child, he yelled at her and said, "Move or I'm gonna take your phone and I'm gonna leave," and then he grabbed her by her hair. Victim did not struggle to take her phone back from him because she was "scared he was going to hit [her] or something." Only after Davis arrived did Child let go of Victim's hair and loosen his grip on the phone enough for Victim to take it from him.

**{10}** While Child remembers the interaction differently in some respects, he agrees that he became upset when Victim showed him the phone; that he argued with Victim when she caught up to him; and that by the time Davis got involved, he was "really, really ticked off." Moreover, the district court was free to reject Child's testimony that he and Victim were having a respectful conversation until Davis arrived. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 ("Contrary evidence supporting acquittal does not provide a basis for reversal because the [trier of fact] is free to reject [the d]efendant's version of the facts."). We hold that this evidence was sufficient to allow the district court to find beyond a reasonable doubt that Child pulled Victim's hair in a rude, insolent or angry manner.

## II.     Child Has Failed to Establish That the District Court Erred in Suspending Child's Commitment in Favor of Probation

**{11}** Child argues that the district court was not authorized by the Children's Code to impose a two-year commitment suspended in favor of probation. Child contends that a suspended sentence is inconsistent with the plain language of Section 32A-2-19(B)(1)(a)-(c), which lists the dispositions the district court is permitted to impose when a child is adjudicated as delinquent, and also with Section 32A-2-24, the statutory provision specifying the procedures required and the dispositions to be made when a delinquent child violates a condition of probation. We do not find Child's arguments persuasive.

**{12}** The parties do not dispute that Section 32-2-19, the disposition provision of the Children's Code, does not specifically authorize the district court to impose a suspended sentence for a delinquent child. We are not persuaded, however, that the absence of a specific authorization is dispositive. Suspending a commitment of two years, a commitment specifically authorized by Section 32A-2-19, in favor of probation, another statutorily authorized disposition, does not necessarily conflict with Section 32A-2-19. *Cf. State ex rel. Child., Youth, & Fam. Dep't v. Paul G.*, 2006-NMCA-038, ¶ 20, 139

N.M. 258, 131 P.3d 108 (holding that a commitment of a child to eighteen years of age is in direct conflict with Section 32A-2-19(B)'s limited options of commitment for one year, commitment for two years, or commitment to age twenty-one).

{13}  Indeed, this Court has previously provided that "[a] child, like an adult, may have his commitment suspended and be placed on probation." *State v. Dennis F.*, 1986-NMCA-081, ¶ 11, 104 N.M. 619, 725 P.2d 595. And again, more recently, this Court has indicated its approval of a suspended commitment in delinquency proceedings. *See State v. Jose S.*, 2005-NMCA-094, ¶ 12, 138 N.M. 44, 116 P.3d 115 (holding that suspending the second of two commitments, and placing the child on probation, is authorized by Section 32A-2-19(B)(2)). These cases suggest that Child's plain reading of Section 32A-2-19(B)(2) is flawed.

{14}  As Child recognizes, however, a plain reading of Section 32A-2-19(B), in isolation, does not necessarily resolve whether the Legislature intended to permit the district court to suspend a commitment in favor of probation. In construing the Children's Code, we examine the Code "in its entirety and construe each part to achieve a harmonious result." *State v. Adam M.*, 2000-NMCA-049, ¶ 5, 129 N.M. 146, 2 P.3d 883. Although Child's argument in regard to Section 32A-2-24 is less than clear, we understand Child to contend that the suspended commitment imposed by the district court denies Child the full hearing required by Section 32A-2-24 to determine whether a delinquent child has violated a term of probation; and that the suspended sentence conflicts with Section 32A-2-24(B)'s requirement that the district court make a new disposition "that would have been appropriate in the original disposition of the case," *id.*, if a child violates the terms of his probation. *See id.* (providing that a revocation proceeding is "governed by the procedures, rights and duties applicable to the proceedings on a delinquency petition"). Child, however, fails to direct us to any authority, or to anything in the record, that supports his assumption that his suspended sentence means he would be denied the full procedures required by Section 32A-2-24 if he were accused of violating a condition of his probation. *See State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 ("[A]ppellate courts will not consider an issue if no authority is cited in support of the issue and that, given no cited authority, we assume no such authority exists[.]").

{15}  Similarly, Child's argument assumes, again without citation to supportive authority or reference to the record, that he would automatically be committed to the Children, Youth & Families Department for two years if his probation were to be revoked.[1] *See* § 32A-2-24.  Child fails to refer us to any provision of law that requires the automatic imposition of the suspended commitment or that removes from the district court the duty to exercise its discretion, pursuant to Section 32A-2-24(B), in making an appropriate disposition. *See id.* (authorizing the district court in its discretion to "extend the period of probation or make any other judgment or disposition that would have been appropriate in the original disposition of the case").

---

1Moreover, because the validity of the suspended sentence was not raised in the district court, Child's brief provides no information regarding the intent of the district court in this case.

**{16}** Lastly, we do not find Child's comparison with the probation violation procedures in the adult criminal context persuasive. Child's brief makes comparisons with adult criminal procedures without supporting the comparisons with citations to the relevant law governing revocation of probation in the criminal justice system. Although there are differences between the two systems, an adult whose sentence is suspended is entitled to a hearing before probation is revoked, and the district court retains wide discretion if a violation is established to continue the probation, impose as new probation, requires the defendant to serve the balance of his sentence, or impose a lesser sentence. *See* NMSA 1978, § 31-21-15 (2016).

**{17}** Because Child has not clearly shown error by the district court in imposing a suspended sentence, and we apply a presumption of correctness in the rulings or decision of the district court, we affirm. *See State v. Carlos A.*, 1996-NMCA-082, ¶ 8, 122 N.M. 241, 923 P.2d 608 ("[T]here is a presumption of correctness in the rulings or decision of the [district] court and the party claiming error must clearly show error.").

**CONCLUSION**

**{18}** For the reasons stated above, we affirm both Child's adjudication as delinquent for the act of battery, and the disposition imposed by the district court.

**{19}   IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**SHAMMARA H. HENDERSON, Judge**